16-3811-(L)
*Federal Trade Commission v. Federal Check Processing, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2018

(Argued: October 3, 2018     Decided: January 11, 2019)

Docket No. 16-3811-cv, 16-3805-cv

FEDERAL TRADE COMMISSION,
*Plaintiff-Appellee*,

v.

WILLIAM MOSES, individually and as an officer of one or more of the Corporate Defendants, FEDERAL CHECK PROCESSING INC., a New York corporation, MARK BRIANDI, individually and as an officer of one or more of the Corporate Defendants.
*Defendants-Appellants*,

FEDERAL RECOVERIES, LLC, *et al.*,
*Defendants*.

Before:     CABRANES, SACK, AND PARKER, *Circuit Judges*.

The Federal Trade Commission brought this action in the United States District Court for the Western District of New York alleging that the defendants' debt collection practices had violated several provisions of the Federal Trade Commission Act and the Federal Fair Debt Collection Practices Act.  The court (William M. Skretny, *Judge*) adopted a report and recommendation of Magistrate

Judge Michael J. Roemer recommending that summary judgment be granted in favor of the FTC.

The defendant-appellant William Moses submitted no brief prior to the deadline for submission set by this Court. We therefore dismiss his appeal pursuant to Local Rule 31.2(d). The defendant-appellant Mark Briandi asserts that there are genuine issues of material fact as to whether he had knowledge of the businesses' practices at the heart of this action. He also contends that the disgorgement order against him is grossly excessive. The evidence before the court on summary judgment established as a matter of law that Briandi had control over the companies' affairs, was aware of their illegal practices, and, therefore, was liable for them. We conclude that the disgorgement assessed jointly and severally against all defendants, including Briandi and Moses, was in an appropriate amount because it was a reasonable approximation of the total amounts received by the defendant companies from consumers as a result of their unlawful acts. The judgment of the district court is therefore:

AFFIRMED.

> HERBERT L. GREENMAN, Lipsitz Green
> Scime Cambria, LLP, Buffalo, NY, *for
> Defendant-Appellant* Mark Briandi.

2

MICHELE ARINGTON (David C. Shonka, Joel Marcus, Katherine M. Worthman, Colin A. Hector, *on the brief*), Federal Trade Commission, Washington, D.C., *for Plaintiff-Appellee.*

SACK, *Circuit Judge*:

The Federal Trade Commission (the "FTC" or the "government") brought this action against thirteen corporate entities (the "Corporate Defendants") and defendants-appellants Mark Briandi ("Briandi") and William Moses ("Moses") alleging that the defendants' combined debt collection violated the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45(a), and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* The United States District Court for the Western District of New York (William M. Skretny, *Judge*) adopted the report and recommendation of Magistrate Judge Michael J. Roemer, recommending the grant of summary judgment to the FTC on the grounds that the evidence before the court had established as a matter of law that the Corporate Defendants violated the FTCA and FDCPA, and that Briandi and Moses were personally liable for the amount of money that the defendants had received because of the violations.

Briandi and Moses appealed.  Moses did not file a brief, and, there being no valid excuse proffered therefor, we dismiss his appeal pursuant to our Local Rule 31.2(d).[1]

Briandi does not contest the district court's conclusion that the Corporate Defendants violated the FTCA and FDCPA.  He argues instead that the court erred by concluding that he is personally liable for the violations.  He also contends that the district court erred by setting the measure of equitable monetary relief as the total proceeds of the debt collection enterprise.  For the reasons set forth below, we agree with the district court on both issues, and, therefore, affirm its judgment.

## BACKGROUND

*General Factual Background*[2]

In 2009, Briandi and Moses founded, and thereafter co-owned and co-directed, the first of the Corporate Defendants, Federal Recoveries, LLC.  Over

---

[1] Local Rule 31.2(d) provides:  "**Failure to File.**  The court may dismiss an appeal or take other appropriate action for failure to timely file a brief or to meet a deadline under this rule."

[2] The following statement of facts is taken primarily from the FTC's "Statement of Material Facts as to Which There is no Genuine Issue to be Tried," which is largely undisputed, and, where relevant, evidence Briandi proffered in attempting to establish the existence of a genuine dispute of material fact**.**

the next few years, Briandi or Moses incorporated twelve other Corporate

Defendants, which were part of a single debt collection enterprise. The

Corporate Defendants' business consisted largely of collecting payday loan

debts,[3] which they bought from consumer-debt creditors and compiled into debt

portfolios. These portfolios contained debtors' names, addresses, and general

information about the debts allegedly owed.

At the Corporate Defendants' behest, nearly all of their approximately

twenty-five employee-debt collectors would routinely contact debtors by

telephone and falsely identify themselves as "processors," "officers," or

"investigators" from a "fraud unit" or "fraud division," then accuse debtors of

check fraud or a related crime and threaten them with criminal prosecution if

they did not pay their debts. On some occasions, collectors called friends, family

members, employers, or co-workers of debtors, telling them that the debtors

owed a debt, had committed a crime in failing to pay it, and faced possible legal

---

[3] "While there is no set definition of a payday loan, it is usually a short-term, high cost loan, generally for $500 or less, that is typically due on [the borrower's] next payday." U.S. Consumer Financial Protection Bureau, "What is a payday loan?," available at https://www.consumerfinance.gov/ask-cfpb/what-is-a-payday-loan-en-1567/ (last visited December 16, 2018); *see also Fed. Trade Comm'n v. Fed. Check Processing, Inc.*, No. 14-CV-122-WMS-MJR, 2016 WL 5956073, at *2 n.5, 2016 U.S. Dist. LEXIS 50589, at *7-8 n.5 (W.D.N.Y. Apr. 13, 2016) (similar).

repercussions.  When debtors or other interested parties sought further information about the debt, collectors typically refused to provide it.

After receiving a litany of consumer complaints about these activities, the Office of the New York State Attorney General began investigating the Corporate Defendants' businesses.  On February 3, 2013, in an attempt to terminate the investigation, Briandi and Moses executed, on behalf of themselves and the relevant Corporate Defendants, a written "Assurance of Discontinuance" (the "AOD") with the State Attorney General.  While not admitting fault, Briandi and Moses conceded in the AOD that the Corporate Defendants were subject to specified federal and state laws, including the FDCPA.  Additionally, they agreed to dissolve some of the Corporate Defendants.  And they stated that they would advise the New York State Attorney General's Office if any of the Corporate Defendants changed their principal place of business; if the individual defendants incorporated a new corporation or business entity; or if any of the Corporate Defendants did business under a new name.  On May 8, 2013, Briandi and Moses also executed an affidavit in which they represented that they had implemented procedures — including the hiring of a "compliance officer" — to ensure that the Corporate Defendants met the requirements of the FDCPA.

Shortly after the AOD became effective, though, and without informing the Attorney General's Office, Briandi and Moses incorporated new Corporate Defendants, some in other states.  And the Corporate Defendants continued to engage in the forsworn practices.

*Briandi's Corporate Responsibilities*

Briandi was a co-founder, co-owner, co-director, and general manager of all but perhaps one of the Corporate Defendants.  He maintained a personal office within the Corporate Defendants' East Amherst, New York, office and a desk in the "collection call" area from which dunning calls were made by the companies' employees.  Briandi had signature authority with respect to the companies' bank accounts, and in the more than four years between February 10, 2010, and February 26, 2014, received approximately $1.3 million in compensation from the Corporate Defendants.

Briandi's principal responsibilities for the companies included signing their checks; managing the banking side of their businesses; handling personnel matters, such as hiring and firing employees; maintaining the companies' phone systems and websites; receiving consumer payments; and — along with Moses, who was in charge of collections — operating the entity, bearing the mellifluous

name "Flowing Streams," which purchased consumer debts. Prior to 2013, Briandi would himself also occasionally make collection calls on behalf of the Corporate Defendants.

After the instant litigation began, Briandi asserted in a deposition taken by FTC counsel on April 15, 2015, that, beginning in March of 2013, he had a diminished involvement with the Corporate Defendants. He testified that this resulted from his decision to become a pastor, which led to his spending much of his work days praying in his office and taking online bible classes. Although Briandi acknowledged that he continued to review corporate bank accounts from time to time, speak to managers, and occasionally take "hostile" consumer calls, Briandi Dep., April 15, 2015, at 65-66, 72; he denied having continued to visit his desk on the collection floor more than "once" or "twice" a day, *id.* at 134, 137, 143.

*Procedural History*

On February 24, 2014, the FTC filed a complaint against Briandi, Moses, and the Corporate Defendants in the United States District Court for the Western District of New York. It alleged two violations of Section 5(a) of the FTCA, 15 U.S.C. § 45(a) ("Unfair or Deceptive Acts or Practices"), and four violations of the FDCPA, 15 U.S.C § 1692 ("Debt Collection Practices"). The FTC accused the

defendants of violating the statutes, despite having executed the AOD, by operating companies in which collectors continued to mask their identities, falsely accuse consumers of various crimes, and refuse to reveal to debtors the circumstances and nature of alleged debts. The FTC also sought and received from the district court an *ex parte* temporary restraining order prohibiting the defendants from using false representations or deceptive means to continue collecting debts, freezing all of the defendants' assets, and appointing a receiver to oversee the Corporate Defendants.

On June 17, 2014, Briandi and Moses asked the district court for one year in which to conduct discovery. A magistrate judge granted their request but noted that "no extensions of this order will be entertained." Dkt. No. 67.

Meanwhile, the FTC subpoenaed and received copies of a variety of scripts used by the Corporate Defendants' employees to make demand telephone calls, recordings of telephone calls between various collectors and consumers, and many consumer complaints and declarations detailing and challenging the companies' practices. The FTC also submitted interrogatories to the defendants and took oral depositions of Briandi and Moses. For their parts, though, Briandi, Moses, and the Corporate Defendants engaged in no discovery. And Briandi

9

failed to answer interrogatories propounded by the FTC until after the discovery deadline had passed, and then only as part of his attempt to oppose the FTC's motion for summary judgment.

The FTC moved for summary judgment on August 27, 2015. The motion included a request for $10,852,396 in monetary relief, for which, the FTC asserted, all of the defendants, include Briandi and Moses, should be jointly and severally liable. That figure was based on "the gross total of consumer funds deposited by merchant processors" found "in the [d]efendants' settlement accounts." Second Suppl. Decl. of FTC Investigator Michael B. Goldstein ¶ 26 (July 24, 2015).

Briandi did not dispute the allegations that the Corporate Defendants engaged in wrongdoing. He denied, however, that he could be held individually liable for the Corporate Defendants' actions. He based that argument largely on his contention that he did not control the Corporate Defendants, did not participate in their activities, and lacked any knowledge of their alleged wrongdoing. Briandi also asserted that the government's requested relief vastly exceeded the Corporate Defendants' unlawful gains.

*The District Court's Decision*

On April 13, 2016, Michael J. Roemer, the magistrate judge to whom the matter had by then been referred by the district court "for all pre-trial matters, including preparation of a report and recommendation on dispositive motions," issued a report and recommendation concluding that the FTC's motion for summary judgment should be granted. *FTC v. Fed. Check Processing, Inc.*, No. 14-CV-122-WMS-MJR, 2016 WL 5956073, at *1, 2016 U.S. Dist. LEXIS 50589, at *2 (W.D.N.Y. Apr. 13, 2016), *adopted*, No. 14-CV-122S, 2016 WL 5940485, 2016 U.S. Dist. LEXIS 141998 (W.D.N.Y. Oct. 13, 2016). First, the magistrate judge concluded that the FTC had proved that Briandi both had "the authority to control the [C]orporate [D]efendants and knew of their wrongdoing." *Id.* at *14, 2016 U.S. Dist. LEXIS 50589 at *41-42. According to the magistrate judge, even if Briandi somehow lacked detailed knowledge of the Corporate Defendants' illicit collection practices, he could not plead ignorance after expressly agreeing to the 2013 AOD. *Id.* at *13, 2016 U.S. Dist. LEXIS 50589 at *40. The existence of the AOD executed by Briandi established that he had notice of the Corporate Defendants' illicit collection activities and was required to ensure that they followed the FTCA and the FDCPA. *Id.*, 2016 U.S. Dist. LEXIS 50589 at *40.

11

Second, the magistrate judge concluded that the FTC's disgorgement request "reasonably approximate[d] the [C]orporate [D]efendants' unjust gains." *Id.* at *16, 2016 U.S. Dist. LEXIS 50589 at *48. As the magistrate judge observed, this amount was based on bank account data compiled by the FTC showing that "between May 2010 and March 2014 the [C]orporate [D]efendants collected $10,852,396 from consumers." *Id.*, 2016 U.S. Dist. LEXIS 50589 at *48. The FTC had also demonstrated that "the defendants' misrepresentations were widely disseminated," and that their operation was "permeated with fraud." *Id.*, 2016 U.S. Dist. LEXIS 50589 at *48. Finally, the magistrate judge noted that the defendant had failed to produce any evidence that would serve to dispute the recommended penalty. *Id.*, 2016 U.S. Dist. LEXIS 50589 at *48.

On October 12, 2016, the district court adopted Magistrate Judge Roemer's report and recommendation in its entirety and entered judgment in the government's favor. *Fed. Trade Comm'n v. Fed. Check Processing, Inc.*, No. 14-CV-122S, 2016 WL 5940485, at *1, 2016 U.S. Dist. LEXIS 141998, at *4 (W.D.N.Y. Oct. 13, 2016).

12

## DISCUSSION

Briandi makes three principal arguments on appeal.  First, he contends that he should have been given time to conduct discovery.  Second, he argues, based on the information contained in his deposition, that there were material facts at issue as to whether he could be held individually liable for the actions of the Corporate Defendants.  He contends that these factual issues rendered summary judgment for the FTC improper.  Finally, he asserts that the disgorgement amount adopted by the district court was grossly excessive.  For the reasons that follow, we disagree with each of these contentions.

### I.  Standard of Review

A district court's decision on a party's request for "more time to conduct discovery . . . is subject to reversal only if [the district court] abused its discretion."  *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994).

We review the "district court's decision to grant summary judgment *de novo*, resolving all ambiguities and drawing all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010) (internal quotation mark omitted).  Summary judgment is appropriate only when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks omitted). "[C]onclusory allegations or denials" therefore "are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Id.* (internal quotation marks omitted).

## II.    Additional Discovery

Briandi contends that the district court wrongly denied an extension to the one-year discovery period already provided. But Briandi has waived this argument. Federal Rule of Civil Procedure 56(d) provides that a party opposing summary judgment based on incomplete discovery must file an affidavit explaining why such discovery is necessary. *See id.* ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery.") Briandi submitted no such affidavit to the magistrate judge or the district court; nor does he contend otherwise.

14

Also, it was Briandi and Moses who asked for the approximately one-year discovery period, and then chose, for unstated reasons, not to conduct any discovery at all during that period. Briandi now asserts that he did not understand the "circumstances of [his] position." Briandi Br. 22. However, he identifies no standard upon which to judge whether or not that is the case. Nor does he explain how the "circumstances of his position" were unclear or confusing, or provide any authority for the proposition that, if they were, he was therefore entitled to an extension on the lengthy period the court provided for discovery.

## III.    Briandi's Personal Liability

Briandi argues that the district court erred in granting summary judgment against him because genuine disputes of material fact exist regarding his control of the debt collection agencies, and therefore his personal liability for their actions. We disagree. In light of the undisputed evidence regarding the Corporate Defendants' operations and Briandi's relationship with them, we conclude that he had both sufficient authority over the Corporate Defendants, and knowledge of their practices, to be held individually liable for their misconduct as a matter of law.

15

**A. Standard for Individual Liability Under the FTCA and FDCPA**

Section 5(a)(1) of the FTCA, 15 U.S.C. § 45(a)(1), prohibits "[u]nfair or deceptive acts or practices in or affecting commerce."  The FTC must show three elements to prove a deceptive act or practice in violation of § 5(a)(1): "[1] a representation, omission, or practice, that [2] is likely to mislead consumers acting reasonably under the circumstances, and [3], the representation, omission, or practice is material." *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006) (brackets in the original; internal quotation marks omitted).  "The deception need not be made with intent to deceive; it is enough that the representations or practices were likely to mislead consumers acting reasonably." *Id.*

An individual may be held liable under the FTCA for a corporation's deceptive acts or practices "if, with knowledge of the deceptive nature of the scheme, he either 'participate[s] directly in the practices or acts or ha[s] authority to control them.'" *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 169 (2d Cir. 2016) (quoting *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989)).[4]  To prevail on the issue, the FTC must therefore establish that

---

[4] The First, Fourth, Seventh, Ninth, Tenth, and Eleventh Circuits have also adopted this standard.  *See FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 12 (1st Cir. 2010); *FTC v. Ross*, 743 F.3d 886, 892 (4th Cir. 2014); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573-74

> the corporate practices were misrepresentations or
> omissions of a kind usually relied on by reasonably
> prudent persons and that consumer injury resulted.
> Once corporate liability is established, the FTC must
> show that the individual defendants participated
> directly in the practices or acts or had authority to
> control them.  Authority to control the company can be
> evidenced by active involvement in business affairs and
> the making of corporate policy, including assuming the
> duties of a corporate officer.

*Amy Travel,* 875 F.2d at 573 (citations omitted).  "The FTC is [also] required to establish the defendants had or should have had knowledge or awareness of the misrepresentations."  *Id.* at 574 (citation omitted).

The FTC need not establish in this context that the defendant had actual and explicit knowledge of the particular deception at issue.  We agree with our sister circuits that "knowledge 'may be established by showing that the individual [defendant] had actual knowledge of the deceptive conduct, [*or*] was recklessly indifferent to its deceptiveness, or had an awareness of a high probability of deceptiveness and intentionally avoided learning of the truth.'"  *FTC v. Primary Grp., Inc.,* 713 F. App'x 805, 807 (11th Cir. 2017) (*per curiam*) (quoting *FTC v. Ross*, 743 F.3d 886, 892 (4th Cir. 2014)); *accord FTC v. World Media*

---

(7th Cir. 1989);  *FTC v. Grant Connect, LLC,* 763 F.3d 1094, 1101 (9th Cir. 2014); *FTC v. Freecom Commc'ns, Inc.,* 401 F.3d 1192, 1204, 1207 (10th Cir. 2005); *FTC v. IAB Mktg. Assocs., LP*, 746 F.3d 1228, 1233 (11th Cir. 2014).

*Brokers*, 415 F.3d 758, 764 (7th Cir. 2005).[5]  And we agree with the Eleventh Circuit that "this standard correctly describes the breadth of individual liability under the FTC[A]." *Primary Grp.*, 713 F. App'x at 807.  Imposing a more rigid knowledge requirement "would be inconsistent with the policies behind the FTCA and place too great a burden on the FTC."  *Amy Travel*, 875 F.2d at 574.

Finally on this score, we conclude that the same standard applies when the FTC brings an action to enforce the FDCPA.  "[V]iolations of the FDCPA are deemed to be unfair or deceptive acts or practices under the [FTCA]." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577, (2010); *see also* 15 U.S.C. § 1692l(a) ("[A] violation of [the FDCPA] shall be deemed an unfair or deceptive act or practice in violation of" the FTCA and is subject to enforcement "in the same manner as if the violation had been a violation of a[n] [FTC] trade regulation rule.")  The FTC, then, is enforcing the FDCPA pursuant to its authority under the FTCA.  And because the FTC can enforce compliance with the FDCPA only by employing the FTCA, and "in the same manner as a violation" of the FTCA, 15 U.S.C. § 1692l(a), it follows, we conclude, that the FTCA individual liability standard applies.

---

[5] Under Eleventh Circuit Local Rule 36-2, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority," as we do here.

18

**B. Briandi's Authority to Control the Corporate Defendants**

Briandi was a founder of all but perhaps one of the Corporate Defendants, held a 50 percent ownership stake in them, had signatory authority over their bank accounts, and served as their co-director and general manager. In these various roles, Briandi had the authority to control the Corporate Defendants' deceptive actions. For example, in his deposition, Briandi admitted to having the power to hire and reprimand employees including those responsible for the Corporate Defendants' violations of the FTCA and FDCPA.

Briandi retained this authority after signing the AOD. From March 2013 until the time of the FTC's complaint, he remained a co-owner, co-director, and general manager of the Corporate Defendants, fielded hostile calls from consumers, continued to review the Corporate Defendants' financial activities, and, once or twice a day, would visit the collection floor, where he would speak to other managers about the corporations' business.

Briandi's deposition testimony that he contends was to the contrary was directed to the question of whether he *exercised* authority to control the Corporate Defendants' conduct, not whether he *possessed* authority to control it, which is the dispositive issue. Viewed in light of all the evidence properly before the district

court on the motion for summary judgment, then, Briandi's denial of involvement in, rather than the authority to control the actions of, the Corporate Defendants did not create a dispute of material fact requiring the district court to deny the motion.

## C. Briandi's Knowledge of the Corporate Defendants' Activities

The defendants were ordered to disgorge $10,852,396, an amount equal to all profits "resulting from [d]efendants' unlawful acts or practices," *Fed. Check Processing, Inc.*, 2016 WL 5940485, at *4, 2016 U.S. Dist. LEXIS 50589, at *40 (adopting magistrate judge's April 13 ,2016 report and recommendation). This amount was calculated by the magistrate judge based on the Corporate Defendants' bank account data between May 2010 and March 2014. The FTC therefore was required to establish that Briandi had knowledge of the Corporate Defendants' wrongdoing during that entire period — both prior to and after his execution of the 2013 AOD — to hold him individually liable for the unlawful receipts of the Corporate Defendants during the same period. We conclude that the FTC did so.

We agree with the magistrate judge's report and recommendation that after the AOD was executed by Briandi in 2013, Briandi was at least aware "of a

20

high probability of fraud and intentionally avoided learning the truth." *Fed. Check Processing, Inc.*, 2016 WL 5956073, at *13, 2016 U.S. Dist. LEXIS 50589, at *36. The AOD explicitly accused the Corporate Defendants of violating the FTC and FDCPA.

After executing the document, Briandi nonetheless continued to oversee the Corporate Defendants' collection activities. As the magistrate judge pointed out, the FTC found "numerous consumer complaints in Briandi's personal office." *Id*; 2016 U.S. Dist. LEXIS 50589, at *40. Briandi was thus aware of consumer complaints against the Corporate Defendants made to the New York Attorney General, the Better Business Bureau, and the FTC, complaints that numbered well into the hundreds.

To be sure, Briandi testified, as noted above, that beginning in March 2013, he neglected his managerial duties in favor of prayer and other spiritual pursuits. But he alleged that he began to neglect these managerial duties only after personally executing the AOD, in which he agreed to take measures to address the Corporate Defendants' deceptive conduct; and he did so after executing an affidavit in which he represented that he had implemented procedures — including the hiring of a "compliance officer" — to ensure that the Corporate

21

Defendants met the requirements of the FDCPA. Therefore, when, according to Briandi, he retreated into spiritual pursuits at the expense of his managerial duties, he was not only on notice that the Corporate Defendants had been violating the FDCPA; he had taken on a personal duty to correct the Corporate Defendants' misbehavior. Briandi's withdrawal under these circumstances is at least evidence of reckless indifference to the Corporate Defendants' deceptive conduct after the 2013 AOD. *See Primary Grp.*, 713 F. App'x at 807.

We also agree with the district court that Briandi had knowledge of the Corporate Defendants' unlawful conduct *prior to* the 2013 AOD. *Fed. Check Processing, Inc.*, 2016 WL 5940485, at *1, 2016 U.S. Dist. LEXIS 141998 at *6 ("At *all times material to the Complaint* . . . Defendant Mark Briandi . . . had actual or constructive knowledge of the violative acts and practices" (emphasis added)). "[T]he degree of participation in business affairs" is a relevant factor in determining whether Briandi had knowledge of the Corporate Defendants' wrongful actions. *Amy Travel*, 875 F.2d at 574. Here, that factor is dispositive. Briandi served as the Corporate Defendants' co-director and general manager. In performing that role, Briandi was intimately involved with the unlawful activities at issue: the collection calls. The evidence before the magistrate judge

22

and district court established that Briandi maintained a personal desk in the call center itself, which, he conceded, he visited at least daily.  Adrian Fronczak, a former employee of the Corporate Defendants, testified in a deposition that Briandi sat at the desk "probably half the day."  Fronczak Dep. 44.  Fronczak also testified that Briandi and Moses would take over calls if asked to do so by one of the debt collectors.  *Id.* at 44-45.

Far from demonstrating that the testimony was false, Briandi essentially corroborated it in his own deposition.  There he admitted that he would take over from employees calls with hostile debtors, but said that he did so less frequently after he signed the AOD and became more engaged in his religious practices.  According to his testimony, then, he was even *more* involved with the debt collection calls prior to the 2013 AOD.  Indeed, Briandi made some of the more offensive collection calls himself; they were mentioned in nine consumer complaints filed before the AOD was executed.  The magistrate judge and district court thus had ample evidence upon which to conclude that Brandi had knowledge of the Corporate Defendants' violations both before and after he executed the AOD.

### IV.    FTC Disgorgement

Finally, Briandi argues that the FTC's request that he be ordered to disgorge $10,852,396, which was adopted by the magistrate judge and confirmed by the district court, was grossly excessive.  Briandi asserts that the FTC's calculation was predicated on "approximately 45 calls where it claimed that fraudulent claims were made," which is "a far cry from the court's finding that the entire operation was 'permeated with fraud.'"  Briandi Br. 30-31 (quoting *Fed. Check Processing, Inc.*, 2016 WL 5956073, at *12, 2016 U.S. Dist. LEXIS 50589, at *48).  Therefore, Briandi contends, "there was no basis to find that [he] should be [held] responsible for the entire amount of all the debt collected over [the] approximately four year period."  Briandi Br. 34.

Section 13(b) of the FTCA provides that "in proper cases the [FTC] may seek, and after proper proof, the court may issue, a permanent injunction."  15 U.S.C. § 53(b).  Although we have acknowledged that "the provision's express text refers only to injunctive relief," we have also held that the "unqualified grant of statutory authority to issue an injunction under [S]ection 13(b) carries with it the full range of equitable remedies, including the power to grant consumer

24

redress and compel disgorgement of profits." *FTC v. Bronson Partners*, LLC, 654 F.3d 359, 365 (2d Cir. 2011) (internal quotation marks omitted).

We have adopted a "two-step burden-shifting framework for calculating equitable monetary relief. That framework requires a court to look first to the FTC to 'show that its calculations reasonably approximated the amount of the defendant[s'] unjust gains' and then shift the burden 'to the defendants to show that those figures were inaccurate.'" *Id.* at 364 (quoting *Verity Int'l,* 443 F.3d at 67).

To obtain equitable monetary relief, the FTC must also demonstrate that consumers relied on the misrepresentations at issue. Because "requir[ing] proof of each individual consumer's reliance on a defendant's misrepresentations would be an onerous task with the potential to frustrate the purpose of the FTC's statutory mandate," we concluded in *FTC v. BlueHippo Funding, LLC*, 762 F.3d 238, 244 (2d Cir. 2014), that "the FTC is entitled to a presumption of consumer reliance upon showing that (1) the defendant made material misrepresentations or omissions that were of a kind usually relied upon by reasonable prudent persons; (2) the misrepresentations or omissions were widely disseminated; and

(3) consumers actually purchased the defendants' products." *Id.* (alteration in original; internal quotation marks omitted).

Here, in support of its motion for summary judgment, the FTC submitted more than five hundred consumer complaints regarding the defendants' debt collection practices, aggressive collection telephone scripts located in fifteen of the twenty-six Corporate Defendants' collection cubicles, and audio recordings of twenty-one of the twenty-five employee debt-collectors falsely telling consumers that the employees were law enforcement personnel or "processors." There is thus ample proof that the misrepresentations at issue were widely disseminated.

Briandi argues that those consumer complaints are inadmissible at the summary judgment stage. But he explicitly waived that challenge in the district court. As the magistrate judge correctly noted:

> The defendants do not argue that the FTC's evidence (*e.g.*, telephone calls, scripts, consumer complaints) is inadmissible, and their failure to do so may be construed as a waiver of any such argument. *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 114 (2d Cir. 1987).

*Fed. Check Processing, Inc.*, 2016 WL 5956073, at *2 n.6, 2016 U.S. Dist. LEXIS 50589, at *8-9 n.6.

Moreover, the case that Briandi relies on for the proposition that it is inappropriate to admit consumer complaints in support of a motion for summary judgment, *FTC v. Washington Data Resources*, No. 8:09-cv-2309, 2011 WL 2669661, 2011 U.S. Dist. LEXIS 72886 (M.D. Fla. July 7, 2011), was a district court decision without precedential effect that rejected the use of consumer complaints as a substitute for trial testimony, rather than in summary judgment proceedings.

Finally, even excluding consideration of these complaints, it is clear from the voluminous audio recordings and collection scripts submitted to the magistrate judge by the FTC that the magistrate judge did not err in concluding – nor did the district court in adopting the conclusion – that the defendants' operation was "permeated with fraud." *Fed. Check Processing, Inc.*, 2016 WL 5956073 at *12, 2016 U.S. Dist. LEXIS 50589, at *37.

The FTC has thus shown that it was entitled to a presumption of reliance. And when the FTC establishes such a presumption, it can "use[] the defendants' gross receipts as a baseline for calculating damages" at the first step of the burden-shifting framework. *BlueHippo Funding, LLC*, 762 F.3d at 245. That is exactly what the FTC did here. If the defendant wanted to attempt to refute the FTC's calculation, he had the burden to do so before the magistrate judge or the

27

district court. *See Verity Int'l,* 443 F.3d at 67 (noting that burden-shifting framework requires "the FTC to first show that its calculations reasonably approximated the amount of the defendant's unjust gains, after which the burden shifts to the defendants to show that those figures were inaccurate" (internal quotation marks omitted)). The defendant chose not to submit any proof that the debt corporations earned "all or some of their revenue through lawful means." *Fed. Check Processing, Inc.,* 2016 WL 5956073, at \*16, 2016 U.S. Dist. LEXIS 50589, at \*48; *see also id.,* 2016 U.S. Dist. LEXIS 50589, at \*49 ("Had [the defendants challenged the accuracy of the FTC's figures] a hearing may have been required to determine the amount of disgorgement.") Accordingly, we conclude that it was appropriate for the district court to award the disgorgement in the amount sought by the FTC.

## CONCLUSION

We have considered the appellants' remaining arguments on appeal and conclude that they are without merit. For the foregoing reasons, we DISMISS Moses's appeal, and AFFIRM the remainder of the judgment of the district court.