18-2955-cv, 18-2959-cv
*James H. Fischer v. Sandra F. Forrest, et al.*

# In the
# United States Court of Appeals
## For the Second Circuit

————————————————

August Term 2019

Nos. 18-2955-cv, 18-2959-cv

JAMES H. FISCHER

*Plaintiff-Appellant,*

v.

SANDRA F. FORREST, SHANE R. GEBAUER, BRUSHY MOUNTAIN BEE
FARM, INC., STEPHEN T. FORREST, JR.,

*Defendants-Appellees.*

————————————————

Appeal from the United States District Court
for the Southern District of New York
No. 14 Civ. 01304 (PAE-AJP), Paul A. Engelmayer, District Judge, Presiding.
(Argued: December 12, 2019; Decided: August 4, 2020)

Before:    PARKER AND CHIN, *Circuit Judges,* AND COTE, *District Judge.*[1]

---

[1] Judge Denise Cote, of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from a judgment of the United States District Court for the Southern District of New York (Engelmayer, *J.*) dismissing claims under the Copyright Act, 17 U.S.C. § 101 *et seq.* and the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.* AFFIRMED.

_____

GREGORY KEENAN (Andrew Grimm, *on the brief*), Digital Justice Foundation, Floral Park, NY, *for Plaintiff-Appellant.*

DANIEL K. CAHN (Seth L. Hudson, Clements Bernard Walker, Charlotte, NC, *on the brief*), Law Offices of Cahn & Cahn, Melville, NY, *for Defendants-Appellees.*

_____

BARRINGTON D. PARKER, *Circuit Judge*:

James H. Fischer appeals from a judgment of the United States District Court for the Southern District of New York (Engelmayer, *J.*). The district court granted summary judgment in favor of the Defendants-Appellees, Sandra Forrest, Shane Gebauer, Stephen Forrest, Jr., and Brushy Mountain Bee Farm ("Brushy Mountain") on Fischer's claims of copyright infringement and copyright management information ("CMI") removal. The controversy underlying this litigation arose from the promotion by the Forrests of their own version of a honey harvesting product. The new product replaced one Fischer

2

had invented and that the Forrests had sold for many years through the website and catalogue of Brushy Mountain, a company the Forrests owned. Judge Engelmayer concluded that Fischer was not entitled to statutory damages or attorneys' fees, the relief he sought on his copyright infringement claim, because the first allegedly infringing act occurred before the work was registered. *See* 17 U.S.C. § 412. The district court also concluded that Fischer failed to establish a CMI removal claim under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 *et seq*. We agree and accordingly, we affirm the judgment of the district court.

**BACKGROUND**

Fischer is an apiarist who developed a product known as Fischer's Bee-Quick in 1999. Fischer's Bee-Quick is a "honey harvesting aid" that is used to clear bees from the superstructures placed on beehives where bees store honey. Bee-Quick is sprayed on a fume board, which is placed on the superstructures. The scent causes the bees to exit the structure, at which point the honey can be harvested. Bee-Quick was distinguished from the products of Fischer's competitors because it was non-toxic and did not have the offensive odor associated with other honey harvesting aids.

Brushy Mountain was a mail-order business specializing in bee-keeping supplies. It was owned and operated during the relevant period by Sandra and Stephen Forrest and Shane Gebauer, its President. Brushy Mountain circulated a catalogue of products well-known in bee-keeping circles, featuring pictures and product descriptions.

Brushy Mountain began featuring Fischer's Bee-Quick in its catalogue in 2002 and described it as follows:

> This 100% Natural, non-toxic blend of oils and herb extracts works just like Bee Go and it smells good! Fischer's Bee Quick is a safe, gentle, and pleasant way to harvest your honey. Are you tired of your spouse making you sleep in the garage after using Bee Go? Are you tired of using a hazardous product on the bees you love? Then this is the product for you! J. App'x at 1JA-267.

Fischer sold Bee-Quick on his own website, Bee-Quick.com, starting around 2000 and he continued to do so during the years it also was available from Brushy Mountain. The description of Bee-Quick in Fischer's brochure, which was featured on the Bee-Quick.com website, included the following phrases:

1. Are you tired of your spouse making you sleep in the garage after using Butyric Anhydride?
2. Are you tired of using hazardous products on the bees you love?
3. Fischer's Bee-Quick is a safe, gentle, and pleasant way to harvest your honey.

4. A Natural, Non-Toxic Blend of Oils and Herbal Extracts. J. App'x at 1JA-169**.**

Around 2010, Brushy Mountain claimed that Fischer's supply of Bee-Quick was unreliable and decided to stop offering it in its catalogue. In its place, Brushy Mountain started selling its own honey harvesting aid called Natural Honey Harvester. Brushy Mountain's January 2011 catalogue described its new product as follows:

> For years we have promoted the use of a natural product to harvest honey but an unreliable supply of such a product has forced us to come out with our own. This 100% Natural, non-toxic blend of oils and herb extracts works just like Bee Go and it smells good! Natural Honey Harvester is a safe, gentle, and pleasant way to harvest your honey. Are you tired of your spouse making you sleep in the garage after using Bee Go? Are you tired of using hazardous products on the bees you love? Then this is the product for you! J. App'x at 1JA-160.

This text remained in the catalogue largely unchanged through 2014 and was featured on the Brushy Mountain website through 2011.

The similarities between the two descriptions are the basis for Fischer's claims. He contends that Brushy Mountain simply replaced "Fischer's Bee-Quick" with "Natural Honey Harvester" in their advertisements, and that this substitution constitutes copyright infringement and the unlawful removal of CMI. *See* 17 U.S.C. §§ 504, 1202.

5

After Fischer initiated this action, initially as a pro se litigant, the parties engaged in extensive motion practice.[2] The claims that were not dismissed proceeded through discovery, and eventually the Defendants-Appellees moved for summary judgment on the remaining claims. Magistrate Judge Andrew J. Peck, who was managing the pretrial activity, recommended granting the motion in its entirety in a July 2017 Report & Recommendation. The district court adopted that Report & Recommendation in full in a February 2018 order and opinion. The district court held that § 412 of the Copyright Act barred the recovery of statutory damages for copyright infringement because the alleged infringement predated the copyright registration. *See* 17 U.S.C. § 412. The district court also held that Fischer failed to establish a violation of the DMCA because the changes that Brushy Mountain had made to its catalogue did not constitute removal of CMI. This appeal followed.

---

[2] The Forrests moved to dismiss Fischer's initial and amended complaints in July 2014, and those motions were denied in January 2015. Fischer then obtained counsel and filed a Third Amended Complaint in December 2015, adding Shane Gebauer and Brushy Mountain as defendants. Pretrial management was referred to Magistrate Judge Andrew J. Peck. Magistrate Judge Peck, in a thorough and thoughtful January 2017 Report & Recommendation, recommended that the district court dismiss Fischer's trademark counterfeiting and New York right of publicity claims, but deny the Forrests' motion to dismiss all other claims. Judge Engelmayer adopted the Report & Recommendation in a March 21, 2017 order and opinion.

## STANDARD OF REVIEW

We review a grant of summary judgment de novo, "resolving all ambiguities and drawing all permissible factual inferences in favor of the party against whom summary judgment is sought." *FTC v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019).[3] A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## DISCUSSION

## I.

The Copyright Office registered Fischer's copyright for the Bee-Quick.com website, which includes the Bee-Quick brochure, on February 7, 2011.[4] We

---

[3] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

[4] In February 2011, Fischer filed a copyright registration application for the text and image files of the Bee-Quick.com website. Fischer mistakenly included thousands of irrelevant documents in his application, and after the Copyright Office detected this error, he submitted a second and then third set of files on September 23 and September 24, 2011 respectively. The Defendants-Appellees disputed below that Fischer's Bee-Quick brochure was included in the initial February submission, but Fischer maintains that the second and third submissions were subsets of the files submitted in February. The Copyright

assume Fischer's website and the text contained in it are copyrightable creative works and the registration for the website is valid.

As noted, Fischer has elected to pursue statutory damages. A copyright infringer can be held liable for either actual damages and profits obtained or for statutory damages. 17 U.S.C. § 504(a). However, § 412 precludes statutory damages or attorneys' fees for "any infringement of copyright in an unpublished work commenced before the effective date of its registration" or "any infringement of copyright commenced after first publication of the work and before the effective date of its registration." 17 U.S.C. § 412. The Defendants-Appellees argue that § 412 bars statutory damages because the first allegedly infringing act occurred prior to February 7, 2011, the registration date of the copyright.

Fischer, on the other hand, argues that § 412 does not apply because there were no pre-registration infringements by the Defendants-Appellees. There are a host of problems with this contention. First, Fischer's pleadings repeatedly

_____

Office issued Fischer a copyright registration dated September 24, 2011, the date of his third, corrected submission. The date of the registration was changed to February 7, 2011, the date of his first submission, after he contacted the Copyright Office to clarify that everything that was in the later submissions was in the first submission.

referred to the pre-registration use of the advertising text in the Brushy Mountain catalogue as infringements. For example, in the Third Amended Complaint (the operative complaint) Fischer alleged that "permission to use Plaintiff's intellectual property in any way had been revoked, as no permission was granted to use Plaintiff's copyrighted works in any way except specifically in the sales of [Bee-Quick]." Third Am. Compl. ¶ 26; 14 Civ. 1307, Dkt. No. 111. Fischer also alleged that the Defendants-Appellees "no longer had any of Plaintiff's product to sell" as of March 2010 and, consequently, at that point their use of the advertising text constituted infringement. *Id*. Fischer repeated this allegation of infringement with respect to a December 10, 2010 email from Brushy Mountain informing him that it would be discontinuing Bee-Quick. Fischer alleged that "[a]t that point, Defendants immediately lost any right, license, or permission to use any of Plaintiff's intellectual property." *Id.* at ¶¶ 46-47. Moreover, the allegedly infringing advertisement for Natural Honey Harvester was in the Brushy Mountain catalogue mailed on January 21, 2011 and the allegedly infringing use of the Bee-Quick advertising text was on the Brushy Mountain website as early as December 26, 2010.

Faced with these obstacles to statutory damages, Fischer's position shifted. He now argues that the Defendants-Appellees' actions prior to his registration of the copyright are not infringements because they had a license to use his advertising material. Although Fischer posits the existence of a license, he has failed to adduce admissible evidence of its existence, much less evidence as to its scope, terms, or the dates of its creation or revocation.

In addition to being inconsistent with Fischer's pleadings, this argument was raised for the first time in his objections to the Magistrate Judge's July 2017 Report. Judge Engelmayer correctly declined to allow Fischer to make an about-face in those objections to advance a theory of liability that contradicted his pleadings and had not been raised during summary judgement proceedings before the Magistrate Judge. *See Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40 n. 3 (2d Cir. 1990). We see no abuse of discretion.

Even were we to consider Fischer's new theory of liability at this late date, it would not save his claim for statutory damages. Fischer first contends that the Defendants-Appellees had a license to use Fischer's material and that the date on which that license was rescinded presents an unresolved factual issue. As noted,

he has not adduced evidence sufficient to create a genuine issue of material fact as to the existence of any such license.

Fischer's other contention is that a factual issue exists as to when the first allegedly infringing act occurred. In support of this contention, Fischer claims that the date the first customers received Brushy Mountain's January 2011 catalogue—the first catalogue to offer Natural Honey Harvester with the allegedly infringing text—must be assumed to post-date his February 7, 2011 copyright registration. He fails to offer anything but speculation in support of this argument. For example, he points this Court to an order form that specified a January 21, 2011 shipping date, the authenticity of which Fischer does not contest. That date is consistent with unrefuted testimony below that established the catalogues containing the allegedly infringing material were mailed on January 21, 2011, well before the decisive registration date. Confronted with these facts, Fischer was obligated to come forth with admissible evidence creating a genuine issue of material fact as to the date of mailing. Fischer failed to do so. He points to a reference on the order form that indicated that the catalogues were initially marked for shipment on January 24, 2011 and argues that a fourteen-day shipment window would result in customers' receipt of the

catalogue after the February 7 registration. This reference does nothing to help Fischer. The document simply says that the catalogues were planned to be shipped on January 24 but were, in fact, shipped on January 21.[5] Speculations such as these are not an appropriate substitute for admissible evidence. As we have noted, "mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996). For these reasons, we must conclude that the first allegedly infringing act occurred before the date of the copyright registration and no genuine issue of material fact exists concerning this issue. Consequently, § 412 bars Fischer's recovery of statutory damages.[6]

---

[5] In fact, Fischer cites no authority for the proposition that the relevant date for the first alleged act of infringement is the date of receipt of the catalogue by the customers. The relevant statute states that "[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display constitutes publication." 17 U.S.C. § 101. Even on Fischer's account, the catalogues were printed and shipped prior to his registration of the copyright.

[6] Fischer argues that, even if this Court finds that statutory damages are precluded pursuant to § 412, this Court should afford him declaratory relief. Fischer bases this claim on the Defendants-Appellees' stipulation at oral argument on the summary judgment motion that they would (1) remove any links and photos containing Fischer's name or product on Brushy Mountain's website, and (2) not use the four advertising phrases again in the future. At the time, Fischer agreed that this mooted his request for injunctive relief. However, on appeal, Fischer claims that the Defendants-Appellees' stipulation is "functionally a consent decree" and that this Court should grant declaratory

**III.**

Fischer next argues that the Defendants-Appellees violated the DMCA when they removed "Fischer's Bee-Quick" from the advertising copy on the Brushy Mountain website. *See* 17 U.S.C. § 1202. The DMCA was passed in 1998 to implement two international treaties resulting from the 1996 World Intellectual Property Organization ("WIPO") Convention. S. Rep. 105-190 at 1-2 (1998); *see also* 144 Cong. Rec. S205-02 (1998) (statement of Sen. Leahy). Congress's intent in enacting the DMCA was to update the copyright laws of the United States for the "digital age." *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 26 (2d Cir. 2012). Generally speaking, the two major aims of the DMCA are (1) anti-circumvention of access controls, codified at 17 U.S.C. § 1201 *et seq.*, and (2) creating a safe harbor for service providers when their users or other third parties engage in infringing activities, codified at 17 U.S.C. § 512. "At its passage, the Digital Millennium Copyright Act contemplated a new world, untested in prior court decisions." 4 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 12A.06[C] (Matthew Bender, Rev. Ed.) (2020).

judgment on the basis of the stipulation. He offers no support for that contention. Moreover, Fischer did not seek declaratory relief below. The stipulation did not concede that the text at issue was Fischer's copyrighted work nor did it concede that the Defendants-Appellees' use of the text was an infringement.

13

This appeal focuses on the anti-circumvention component of the DMCA, and specifically on the definition of CMI in § 1202(c). Section 1202 was "required by both WIPO Treaties to ensure the integrity of the electronic marketplace by preventing fraud and misinformation." H.R. Rep. 105-551(I) at 10 (1998); *see also* S. Rep. 105-190 (1998). Section 1202 realizes this aim by "prohibit[ing] intentionally providing false copyright management information . . . with the intent to induce, enable, facilitate or conceal infringement. It also prohibits the deliberate deleting or altering [of] copyright management information." H.R. Rep. 105-551(I) at 10. The section is intended "to protect consumers from misinformation as well as authors and copyright owners from interference with the private licensing process." *Id.* at 10-11; *see also* Nimmer § 12A.08[A]. While the DMCA establishes certain protections for copyright holders in a digital medium, it also establishes limitations on copyright liability in the interest of promoting growth, development, and innovation in the digital universe. H.R. Rep. 105-551(I) at 11-12.

In broad strokes, § 1202(c) protects the "[i]ntegrity of copyright management information" and prohibits the removal of CMI from copyrighted works. *See* 17 U.S.C. § 1202(a)-(c). The statute describes CMI as information such

14

as the author, title, and other identifying data about the copyright holder of the work. In relevant part, the term "copyright management information" is defined as:

> any of the following information conveyed in connection with copies . . . of a work . . . or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy . . . or display of a work:
> (1) The title and other information identifying the work, including the information set forth on a notice of copyright.
> (2) The name of, and other identifying information about, the author of a work.
> (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
> . . .
> (6) Terms and conditions for use of the work.
> (7) Identifying numbers or symbols referring to such information or links to such information.
> (8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.

17 U.S.C. § 1202(c). To establish a violation of this subsection, a litigant must show (1) the existence of CMI on the allegedly infringed work, (2) the removal or alteration of that information and (3) that the removal was intentional. 17 U.S.C. § 1202(b).

Fischer alleges that his name is CMI and that by deleting the phrase "Fischer's Bee-Quick" and replacing it with "Natural Honey Harvester," the Defendants-Appellees violated § 1202(c) by removing his name from copyrighted material. This assertion misunderstands what constitutes CMI.

While an author's name can constitute CMI, not every mention of the name does. Here, "Fischer's" is part of a product name; it is not a reference to "James H. Fischer" as the owner of a copyrighted text. Nor is the name "[t]he title and other information identifying the work" or the "[t]he name of, and other identifying information about, the author of the work" as required by the statute. *See* 17 U.S.C. § 1202(c)(1)-(3). We grant that Natural Honey Harvester was designed as a closely resembling alternative to Fischer's Bee-Quick, and that the advertising copy used on Brushy Mountain's website and catalogue for Natural Honey Harvester mirrors the advertising copy that had been used for Fischer's Bee-Quick. However, what was removed was not Fischer's name as the copyright holder of the advertising text, but "Fischer's" insofar as it was a part of the actual product's name.

Judge Engelmayer provided an example to illustrate the problem with Fischer's approach:

16

Imagine that the back cover of the Ian Fleming novel *Dr. No.* contained the following encomium: "In Ian Fleming's *Dr. No*, Fleming shows his mastery of Cold War spycraft." Imagine then that a person lifted language from that review to promote a different thriller, writing: "In John Le Carré's *Tinker, Tailor, Soldier, Spy*, Le Carré shows his mastery of Cold War spycraft." Whatever the other legal implications of such conduct might be, it is inconceivable that a DMCA claim would lie from the elimination of Fleming's name. The expression at issue does not connote Fleming's copyright ownership of anything.

*Fischer v. Forrest*, 286 F.Supp.3d 590, 611 (S.D.N.Y. 2018). Similarly, "Fischer's Bee-Quick" used in material published by a third party like Brushy Mountain, which contains advertisements for dozens of other products from many different suppliers, cannot be reasonably construed as an identifier of the copyright holder of the advertising text. In other words, "Fischer's" in "Fischer's Bee-Quick" is not used for 'managing' copyright information with respect to the text at issue.

The name of an author can, of course, constitute CMI when conveyed in connection with the relevant copyrighted work. 17 U.S.C. § 1202(c). But "Fischer's" cannot be construed as CMI with respect to the advertising text at issue because it is simply the name of the product being described. In short: context matters.

## CONCLUSION

We have considered Fischer's remaining arguments and conclude they are without merit. The judgment of the district court is **AFFIRMED.**