*Pride Techs., LLC v. Khublall*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of December, two thousand twenty-two.

PRESENT:
   AMALYA L. KEARSE,
   MICHAEL H. PARK,
   STEVEN J. MENASHI,
    *Circuit Judges.*

---

PRIDE TECHNOLOGIES, LLC, DBA PRIDE ONE,

   *Plaintiff-Appellant,*

  v.              21-2225

DANIEL KHUBLALL,

   *Defendant-Appellee.*

---

**FOR PLAINTIFF-APPELLANT:**     NEAL H. KLAUSNER, Davis+Gilbert LLP (Jacklyn Siegel, Eva M. Jiménez, Davis+Gilbert LLP; Andrew Sal Hoffman, Hoffman & Associates, *on the brief*), New York, NY.

**FOR DEFENDANT-APPELLEE:**     DANIEL B. GROSSMAN (David Wechsler, *on the brief*), Harris St. Laurent & Wechsler LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Schofield, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Pride Technologies, LLC ("Pride") appeals the August 17, 2021 opinion and order of the district court granting summary judgment for Defendant-Appellee Daniel Khublall. Pride, a payroll-services provider, filed this suit against Khublall for tortious interference with Pride's business relationship with Khublall's former employer Thomson Reuters Co. ("Thomson"). According to Pride, Khublall—while working as Thomson's Senior Director of Contingent Labor Sourcing—improperly caused Thomson to terminate its contractual relationship with Pontoon Solutions, Inc. ("Pontoon"), a managed service provider that worked with Pride to offer services to Thomson, in retaliation for Pride's failure to pay a bribe to Khublall. Khublall moved for summary judgment, arguing that Pride failed to raise triable issues of fact as to several required elements of a tortious-interference claim. On appeal, Pride contends that the district court erred by holding there are no genuine issues of material fact. We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

"We review *de novo* a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the party against whom summary judgment was granted

2

and drawing all reasonable inferences in that party's favor. Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Bey v. City of New York*, 999 F.3d 157, 164 (2d Cir. 2021) (cleaned up).

To prevail on a claim for tortious interference with business relations under New York law, "a plaintiff must show that (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."[1] *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (cleaned up). This Court has equated the fourth element to a showing of "proximate causation." *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004) (cleaned up). Plaintiffs cannot succeed on a claim of tortious interference with business relations "unless they demonstrate *both* wrongful means *and* that the wrongful acts were the *proximate cause* of the rejection of the plaintiff's proposed contractual relations." *Id.* at 171 (citation omitted). A "defendant's wrongful conduct against third-parties [must bear] a direct nexus to the relationship with which the defendant interfered." *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 133 (2d Cir. 2008). New York courts have found a triable "direct nexus" where a defendant bribed public officials to deny the plaintiff a building permit, *see Sommer v. Kaufman*, 399 N.Y.S.2d 7, 7-8 (App. Div. 1st Dep't 1977), and where a defendant threatened the plaintiff's employer with harm if plaintiff's employment was not terminated, *see Pagliaccio v. Holborn Corp.*, 734 N.Y.S.2d 148,

---

[1] The district court had subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because complete diversity exists between Khublall (a citizen of New Jersey) and Pride (a citizen of Connecticut and Colorado), and the matter in controversy exceeds $75,000. In their briefs, Pride and Khublall assume that New York law governs. "Under New York choice-of-law rules, where the parties agree that a certain jurisdiction's law controls, this is sufficient to establish choice of law." *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016).

3

149 (App. Div. 1st Dep't 2001). But where a defendant's alleged fraud "ha[s] at most a tenuous relation to the harm alleged," the plaintiff fails to show causation. *Catskill Dev., L.L.C.*, 547 F.3d at 133.

As to the third element of tortious interference, requiring either improper means or wrongful purpose, New York courts have required "a particularized pleading of allegations that the acts of the defendant corporate officers which resulted in the tortious interference . . . either were beyond the scope of their employment or, if not, were motivated by their personal gain, as distinguished from gain for the corporation."[2] *Petkanas v. Kooyman*, 759 N.Y.S.2d 1, 2 (App Div. 1st Dep't 2003).

We affirm the grant of summary judgment because, as the district court correctly held, "even assuming that Khublall acted tortiously toward Thomson, . . . his conduct did not *cause* Thomson to terminate its business relationship with Pride." Special App'x at SPA-8. First, a reasonable jury would find that Thomson's decision to sever ties with Pride was an independent business decision. As the undisputed facts demonstrate, since at least 2014, Thomson undertook a "multi-year transformation" of its operations, which involved hiring a consulting firm and identifying Thomson's "Professional Sourcing" and "Sourcing" department as an "area where greater efficiency could be achieved." Joint App'x at JA-49. The direct-source program was the centerpiece of these reforms and permitted Thomson to build its own pool of contingent workers without relying as heavily on external vendors. Khublall's direct supervisors approved the direct-source pilot and independently expressed enthusiasm about a broader rollout of the program using

---

[2] "While a cause of action for interference with prospective contract or business relationship is closely akin to one for tortious interference with contract, the former requires proof of more culpable conduct on the part of the defendant." *106 N. Broadway, LLC v. Lawrence*, 137 N.Y.S.3d 148, 157 (App. Div. 2d Dep't 2020). So a fortiori, conduct falling short of a claim for tortious interference with contract also falls short of a claim for tortious interference with business relations.

the services of a third-party company, TalentNet, Inc. Moreover, after Pride's CEO Leo Russell complained to Thomson about Khublall's conduct, Thomson paused the direct-source rollout, investigated the complaint, and concluded that "[r]egardless of Mr. Russell's opinion on the viability of the strategy, the decision by Thomson Reuters management to engage TalentNet as part of the Sourcing transformation strategy is a business decision." *Id.* at JA-63. In any event, following Russell's complaint and the subsequent internal investigation, Khublall was "not involved further in the decision to not enter a new contract with Pontoon and [was told] not to engage to the extent possible with Pride." *Id.* at JA-251 to -52. We thus conclude that Thomson made an independent business decision to terminate its relationship with Pride as part of its strategy to cut contingent-labor costs.

Pride's arguments to the contrary are unavailing. Pride contends that Thomson could not have made an independent business decision because in Khublall's deposition, he gave evasive answers when asked who decided to terminate Thomson's business relationship with Pride. But Pride provides no evidence beyond "[c]onclusory allegations or denials" to suggest Khublall's answers showed that he was responsible for the termination of the business relationship, and such insinuations "are not evidence and cannot themselves create a genuine issue of material fact where none would otherwise exist." *FTC v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019). In contrast, the record includes declarations from three levels of Thomson executives above Khublall, and those supervisors expressly stated under oath that the decision to terminate Pride was a decision made by Thomson executives independent of Khublall. Pride has produced no evidence sufficient to raise a genuine issue to be tried on its assertion that the decision was made by Khublall.

Pride also contends that Khublall tainted Thomson's decision-making process by making a series of misrepresentations about Pride and concealing from Thomson his conflicts of interest.

5

Pride's CEO Russell contacted Thomson and accused Khublall of unethical conduct including attempted bribery. And when he was interviewed by Thomson officials, Russell stated that he had recordings of Khublall to support his accusation. But when Thomson requested the recordings, Russell refused to produce them. Pride points to no evidence in the record to suggest that Thomson's decision to terminate Pride was based on misinformation.

Second, Khublall lacked the authority at Thomson to terminate Pride as a vendor. It is undisputed that in Thomson's chain of command, Khublall reported to Nicolas Passaquin, who reported to Carl Tobiasen, who reported to Rick King, who in turn reported to Thomson's Chief Transformation Officer Neil Masterson, who oversaw Thomson's efforts to streamline innovation and cut costs. As Khublall's supervisors confirmed in declarations, Khublall "did not have authority to proceed independently[,] . . . to sign a contract for Thomson or end a Thomson business relationship." Joint App'x at JA-138. Khublall was, in the words of one supervisor, "directed and authorized to implement a new direct sourcing business practice," Joint App'x at JA-138, and another supervisor stated that the "Finance, Sourcing, and HR departments independently approved Khublall's direct sourcing proposal," *id.* at JA-70. So even if Khublall had acted tortiously, he lacked the authority to terminate Pride. Pride argues that Khublall's supervisors "did not know that he intended to change payroll vendors or replace Pride with TalentNet." Appellant's Br. at 30. But Khublall lacked authority to terminate contracts, and his supervisors all acknowledged that the direct-source strategy would lead to the displacement of certain vendors, including Pride.

Moreover, Khublall's actions were neither beyond the scope of his employment nor motivated by his personal gain as distinguished from the company's gain. One of Khublall's responsibilities as Thomson's Director of Contingent Labor was the development of a direct-

6

sourcing strategy for Thomson's contingent labor services that would save money for the company. Reevaluating Thomson's relationship with contingent-labor providers fell within the scope of Khublall's duties. And Thomson's investigation of Russell's allegation that Khublall was acting in his personal interest and contrary to the interests of the company resulted in a determination that Russell's allegation lacked merit.

Khublall has shown that no reasonable jury could find that Khublall's alleged tortious acts caused the termination of Pride and Thomson's business relationship. And Pride has not demonstrated that Khublall's conduct as an officer of Thomson was outside the scope of his employment such that a finding of liability for tortious interference would be appropriate in any event. Pride is thus unable to satisfy the required elements of a claim of tortious interference with business relations under New York law. We affirm the district court's grant of summary judgment for Khublall on that basis; given Pride's inability to prove one essential element of its tortious-interference claim, disputes as to other elements, if any and even if genuine, are not material. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7