UNITED STATES DISTRICT COURT 
SOUTHERN DISTRICT OF NEW YORK 
-------------------------------------- X 
 : 
ANDREA ROSSBACH, : 
 : 
 Plaintiff, : 19cv5758 (DLC) 
 : 
 -v- : OPINION AND ORDER 
 : 
MONTEFIORE MEDICAL CENTER, NORMAN : 
MORALES, and PATRICIA VEINTIMILLA, : 
 : 
 Defendants. : 
 : 
-------------------------------------- X 
APPEARANCES 
For plaintiff Andrea Rossbach: 
Daniel Altaras 
Derek Smith Law Group, PLLC 
One Penn Plaza 
Suite 4905 
New York, NY 10119 
For defendants Montefiore Medical Center, Norman Morales, and 
Patricia Veintimilla: 
Jean L. Schmidt 
Nina Massen 
Littler Mendelson, P.C. 
900 Third Avenue 
New York, NY 10022 
DENISE COTE, District Judge: 
 Plaintiff Andrea Rossbach brings this employment 
discrimination case against her former employer, Montefiore 
Medical Center (“Montefiore”) and her former colleagues at 
Montefiore, Norman Morales and Patricia Veintimilla, under Title 
VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. 
(“Title VII”), the New York State Human Rights Law, N.Y. Exec. 
Law § 290 et seq. (“NYSHRL”), and the New York City Human Rights 
Law, N.Y.C. Admin. Code § 8-101 et seq. (“NYCHRL”). Rossbach 
principally alleges that she was sexually harassed by defendant 
Morales and fired after she objected to his misbehavior. The 
defendants have moved for summary judgment on many but not all 

of the claims, pursuant to Rule 56, Fed. R. Civ. P. For the 
following reasons, the motion for summary judgment is granted in 
part. 
 Background 
 The following facts are undisputed or taken in the light 
most favorable to Rossbach, unless otherwise noted. 
 Rossbach is a registered nurse. In 2014, Montefiore hired 

her to work in the emergency department of the Children’s 
Hospital at Montefiore (“CHAM”), a hospital in the Montefiore 
system. Almost immediately, Morales, who worked as the Interim 
Administrative Nurse Manager in the CHAM emergency department, 
began making unwanted sexual comments to Rossbach. In March 
2017, Rossbach transferred to the day shift and Morales became 
her direct supervisor. At this point, Morales also began to 
subject her to unwanted physical contact. For instance, in 
April 2017, Morales rubbed Rossbach’s shoulders; in June 2017, 
Morales attempted to force Rossbach to sit on his lap; and in 
September and November 2017, Morales groped Rossbach. When 
Morales engaged in this conduct, Rossbach objected. 
 In September 2017, Morales made a sexual gesture to 
Rossbach in front of Veintimilla. In response, Rossbach asked 
Veintimilla if Morales was “always like this or just to [her].” 1 

Veintimilla gave Rossbach a “dirty look and an eye roll” and 
walked away. Veintimilla, who was also a registered nurse, 
worked as the patient care coordinator in the CHAM emergency 
department. Veintimilla was responsible for assigning 
Rossbach’s schedule and duties within the CHAM emergency 
department. 
 In November 2017, Veintimilla told Rossbach that she was 
having an affair with Morales and that she was jealous of 
Rossbach because Morales often flirted with Rossbach in front of 
her. After that encounter, on November 28, Veintimilla offered 
Rossbach a brownie. Rossbach ate the brownie the following day 
and became ill. Rossbach confronted Veintimilla on November 30, 

and Veintimilla told her that the brownie contained marijuana.2 
 On December 7, Rossbach was assigned to work an overtime 
shift. During that shift, Veintimilla reported to CHAM 

1 Veintimilla denies that Rossbach ever complained to her about 
Morales’ conduct. She also denies that she ever witnessed any 
sexual or inappropriate conduct by Morales directed at Rossbach. 

2 Veintimilla denies that she gave Rossbach a brownie containing 
marijuana. 
management that Rossbach was exhibiting behavior, including 
lethargy, suggesting she might be under the influence of drugs. 
Upon receiving this report, the director of emergency services 
at CHAM contacted the senior labor and employee relations 
manager at CHAM. Rossbach was then escorted to Montefiore’s 

Occupational Health Services (“OHS”) department to undergo a 
fitness for duty evaluation. 
 Montefiore maintains a drug and alcohol policy, under which 
an employee who “reports to work under the influence of alcohol 
or illegal drugs will be disciplined up to and including 
immediate discharge.” In accordance with Montefiore’s drug and 
alcohol policy, Charles Fithian, an operations manager, 
completed a fitness for duty observation form documenting 
Rossbach’s condition. The form states that Rossbach was “unable 
to focus on job,” was “not making eye contact,” and that her 
“hands [were] shaking.” The form further notes that Rossbach 
had been “pulled off [the] floor by [the] charge nurse for [the] 

same behavior” within the past year. 
 Dr. Susan Hacker, a Montefiore physician, then conducted 
Rossbach’s fitness for duty evaluation. During the examination, 
Rossbach told Dr. Hacker that she had a prescription for 
Adderall to treat attention deficit disorder. Dr. Hacker’s 
record of her examination of Rossbach indicates that she 
assessed Rossbach as alert and oriented, but that Rossbach 
appeared agitated, fidgety, and upset during the examination. 
Dr. Hacker concluded that Rossbach should be drug tested and 
Rossbach provided a urine sample for testing. Rossbach was then 
ordered to return to the OHS clinic for further evaluation the 

following morning, and to bring her Adderall prescription. That 
evening, Rossbach was instructed not to return to work until her 
drug test results had been reviewed by OHS. The following 
morning, Rossbach returned to OHS and presented prescriptions 
for Adderall and Xanax. 
 On December 18, Dr. Hacker informed Rossbach that she had 
tested positive for Adderall, Xanax, marijuana and the synthetic 
opiate Tramadol. Rossbach told Dr. Hacker that the Tramadol had 
been prescribed to her mother, and that her mother had given her 
the Tramadol. Dr. Hacker then asked Rossbach to undergo a 
second drug test. The results of this test, which were received 
on January 2, 2018, were negative for marijuana. 

 At a meeting on January 5, 2018 with three other Montefiore 
employees, Morales gave Rossbach a discipline notice. The 
discipline notice informed her that she had been discharged for 
violating Montefiore’s drug and alcohol policy. 
 In September 2018, Rossbach filed a complaint with the 
Equal Employment Opportunity Commission, which was subsequently 
transferred to the New York State Division of Human Rights. In 
her complaint, Rossbach alleged that she had been sexually 
harassed by Morales and that she had tested positive for 
marijuana because she had eaten a brownie containing marijuana 
that had been provided to her by Veintimilla. 

 Rossbach filed this lawsuit on June 19, 2019. In broad 
strokes, Rossbach brings gender discrimination, retaliatory 
firing, and hostile work environment claims. After the parties 
completed discovery, defendants moved for partial summary 
judgment on November 20, 2020. The motion principally addresses 
the claims for gender discrimination and retaliation. The 
motion became fully submitted on January 19, 2021. 

 Discussion 
 A motion for summary judgment may only be granted if all of 
the submissions taken together “show[ ] that there is no genuine 
dispute as to any material fact and the movant is entitled to 
judgment as a matter of law.” Fed. R. Civ. P. 56(a). “An issue 
of fact is genuine if the evidence is such that a reasonable 
jury could return a verdict for the nonmoving party. A fact is 
material if it might affect the outcome of the suit under the 
governing law.” Frost v. N.Y.C. Police Dep’t, 980 F.3d 231, 242 
(2d Cir. 2020) (citation omitted). The moving party must 
demonstrate the absence of a material factual question, and in 
making this determination, the court must view all facts in the 
light most favorable to the non-moving party. See id. In 
making this determination, the court “draws all inferences in 
favor of the nonmoving party.” Gemmink v. Jay Peak Inc., 807 
F.3d 46, 48 (2d Cir. 2015). 

 “Where the moving party demonstrates the absence of a 
genuine issue of material fact, the opposing party must come 
forward with specific evidence demonstrating the existence of a 
genuine dispute of material fact.” Robinson v. Concentra Health 
Servs., Inc., 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). 
The nonmoving party may rely neither “on conclusory statements 
or on contentions that the affidavits supporting the motion are 
not credible,” CIT Bank N.A. v. Schiffman, 948 F.3d 529, 532 (2d 
Cir. 2020) (citation omitted), nor on “mere speculation or 
conjecture as to the true nature of the facts,” Fed. Trade 
Comm’n v. Moses, 913 F.3d 297, 305 (2d Cir. 2019) (citation 
omitted). 

I. Sex Discrimination Claims 
 Rossbach alleges that her firing by Montefiore constituted 
sex discrimination under Title VII, the NYSHRL, and the NYCHRL. 
Montefiore has moved for summary judgment on Rossbach’s claims 
under all three statutes, while Morales and Veintimilla have 
moved for summary judgment on her claims under the NYSHRL and 
the NYCHRL.3 For the following reasons, the defendants’ motions 
for summary judgment on Rossbach’s sex discrimination claims are 
granted. 
 A. Title VII and the NYSHRL 
 Title VII prohibits an employer from “discharg[ing] any 
individual . . . because of such individual’s . . . sex.” 42 

U.S.C. § 2000e-2(a)(1). Similarly, the NYSHRL prohibits an 
“employer . . . because of an individual’s . . . sex . . . 
[from] discharg[ing] from employment such individual.” N.Y. 
Exec. Law § 296(1)(a). Claims of discrimination prohibited by 
Title VII are analyzed in accordance with the burden-shifting 
framework set forth by the United States Supreme Court in 
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). NYSHRL 
claims are analyzed “according to the same standards” applied to 
Title VII claims. Walsh v. N.Y.C. Hous. Auth., 828 F.3d 70, 74- 
75 (2d Cir. 2016) (citation omitted). 
 Under the McDonnell Douglas burden-shifting framework, a 
sex discrimination plaintiff must first establish a prima facie 

case of discriminatory discharge “by showing that: (1) she is a 
member of a protected class; (2) she satisfactorily performed 
the duties required by the position; (3) she was discharged; and 

3 The plaintiff has brought her Title VII claims solely against 
Montefiore. Title VII does not allow for claims against 
individuals. Lore v. City of Syracuse, 670 F.3d 127, 169 (2d 
Cir. 2012). 
(4) . . . the discharge occurred in circumstances giving rise to 
an inference of unlawful discrimination.” Lenzi v. Systemax, 
Inc., 944 F.3d 97, 107 (2d Cir. 2019) (citation omitted). “If 
the plaintiff establishes a prima facie case, a presumption of 
discriminatory intent arises and the burden shifts to the 

employer to articulate a legitimate, non-discriminatory reason 
for its policy or action.” Id. (citation omitted). “If the 
employer articulates such a reason for its actions, the burden 
shifts back to the plaintiff to prove that the employer's reason 
was in fact pretext for discrimination.” Vega v. Hempstead 
Union Free Sch. Dist., 801 F.3d 72, 83 (2d Cir. 2015) (citation 
omitted). At the final phase of the analysis, “the employee’s 
admissible evidence must show circumstances that would be 
sufficient to permit a rational finder of fact to infer that the 
employer's employment decision was more likely than not based in 
whole or in part on discrimination.” Kirkland v. Cablevision 
Sys., 760 F.3d 223, 225 (2d Cir. 2014) (citation omitted). This 

requires a showing that “the employer's explanation is a pretext 
for . . . discrimination.” Id. 
 Assuming without deciding that Rossbach has met her de 
minimis burden of demonstrating a prima facie case of 
discrimination, defendants have set forth a legitimate non- 
discriminatory reason for Rossbach’s discharge. Defendants have 
provided evidence that Rossbach was fired after (1) she was 
ordered by CHAM management to undergo a fitness for duty 
evaluation after they received reports of her inappropriate 
behavior at work; (2) a Montefiore physician conducted a fitness 
for duty evaluation of Rossbach and concluded that a drug test 

was warranted; and (3) the drug test indicated a positive result 
for marijuana and non-prescribed Tramadol, indicating that 
Rossbach had likely violated Montefiore’s drug and alcohol 
policy. As such, the burden shifts to Rossbach to prove that 
this reason for her discharge was pretextual. Rossbach raises 
several arguments as to why Montefiore’s stated reason for 
firing her is pretextual, none of which is convincing. 
 First, Rossbach argues that she had not, in fact, exhibited 
any behaviors indicating that she was under the influence of 
drugs on the day she was sent for the fitness for duty 
evaluation. This argument misidentifies the relevant analysis. 
In employment discrimination cases involving allegations of 

misconduct by the employee, courts are “decidedly not interested 
in the truth of the allegations against plaintiff,” but instead 
“interested in what motivated the employer.” McPherson v. 
N.Y.C. Dept. of Educ, 457 F.3d 211, 216 (2d Cir. 2006) (emphasis 
in original) (citation omitted). Therefore, it is not relevant 
whether she was, in fact, exhibiting signs of being under the 
influence on the day in question. Montefiore management had 
received several reports that she appeared to be under the 
influence, as well as positive drug test results, and the 
relevant decision-makers were entitled to rely on those reports 
and those results in making the discharge decision. 

 Second, Rossbach argues that deviations from Montefiore 
policy regarding the investigation of employee misconduct 
indicate pretext on the part of Montefiore. Rossbach notes that 
only one supervisor filled out a Fitness for Duty Observation 
Form, while two observation forms are required by Montefiore 
policy, and that Rossbach’s supervisor and the Montefiore 
Employee and Labor Relations department were not notified of the 
positive drug tests at the appropriate time. The Second Circuit 
has held that “departures from procedural regularity” by an 
employer “can raise a question as to the good faith of the 
process where the departure may reasonably affect the decision.” 
Stern v. Trs. of Columbia Univ., 131 F.3d 305, 313 (2d Cir. 

1997) (citation omitted). But here, any departure from 
procedural regularity was minor and immaterial. Given the 
evidence of Rossbach’s violation of Montefiore policy -– 
including the determination by a physician that a drug test was 
appropriate and the positive drug tests –- no reasonable jury 
could find that the departures from policy to which Rossbach 
points affected the ultimate decision to fire Rossbach. 
 Third, Rossbach contends that Montefiore’s handling of her 
positive marijuana test demonstrates pretext. Rossbach suggests 
that the supervisor responsible for her firing failed to follow 

up with OHS regarding her positive marijuana test, and that if 
the supervisor had done so, she would have learned that a 
follow-up marijuana test was negative. She also argues that 
certain comments made regarding the marijuana test during the 
deposition of Dr. Hacker of OHS indicate certain irregularities 
surrounding her discharge. These contentions do not defeat 
summary judgment, because even if they are true, Rossbach’s 
positive Tramadol test served as an independent basis for her 
firing. 
 Rossbach also argues that Montefiore’s decision to 
immediately fire her after the positive drug test indicates 
pretext, because the Montefiore policy contemplates progressive 

discipline for drug and alcohol violations. But this argument 
misstates the plain text of the policy and Rossbach’s history of 
misconduct. It is undisputed that the Montefiore policy allowed 
for immediate discharge after a single violation. Moreover, the 
fitness for duty form completed by Fithian indicates that 
Rossbach had previously been relieved of duty for similar 
behavior in the year preceding the December 7, 2017 incident. 
 Finally, Rossbach argues that Montefiore is liable for 
Veintimilla’s discriminatory conduct under the “cat’s paw” 
theory of Title VII liability. The “cat’s paw” theory allows 

for employer liability in “a situation in which an employee is 
fired . . . by a supervisor who himself has no discriminatory 
motive, but who has been manipulated by a subordinate who does 
have such a motive and intended to bring about the adverse 
employment action.” Vasquez v. Empress Ambulance Serv., Inc., 
835 F.3d 267, 272 (2d Cir. 2016) (citation omitted). Rossbach 
contends that Montefiore is liable under the “cat’s paw” theory 
because it relied on Veintimilla’s report in firing her, and 
Veintimilla was motivated by discriminatory animus. 
 This argument is unavailing. The “cat’s paw” theory of 
liability only accrues if the employer “negligently relies on a 
low-level employee’s false accusations in making an employment 

decision.” Id. at 275. Here, Montefiore did not rely on 
Veintimilla’s report in firing Rossbach: it conducted a process 
that involved an observational report by a different employee, a 
medical evaluation by a physician, and a drug test. As such, 
Montefiore cannot be held liable on a “cat’s paw” theory, and 
the defendants are therefore entitled to summary judgment. 
 B. The NYCHRL 
 Rossbach has also brought gender discrimination claims 
under the NYCHRL. The NYCHRL prohibits any “employer or an 
employee or agent thereof” from “discharg[ing] from employment” 
any person “because of . . . gender.” N.Y.C. Admin. Code § 8- 
107(1)(a). While the text of the NYCHRL is similar to that of 

Title VII and the NYSHRL, the law is to be construed “broadly in 
favor of discrimination plaintiffs, to the extent that such a 
construction is reasonably possible.” Mihalik v. Credit Agricole 
Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) 
(citation omitted). As a result, “courts must analyze NYCHRL 
claims separately and independently from any federal and state 
law claims.” Id. 
 While the NYCHRL analysis must be conducted separately from 
any related Title VII and NYSHRL analysis, and the NYCHRL 
receives a broader construction, the NYCHRL analysis involves a 
similar burden-shifting framework. First, “the plaintiff must 
establish a prima facie case, and the defendant then has the 

opportunity to offer legitimate reasons for its actions.” Ya- 
Chen Chen v. City Univ. of N.Y., 805 F.3d 59, 75–76 (2d Cir. 
2015). If the defendant can provide a legitimate non- 
discriminatory reason for its actions, “summary judgment is 
appropriate if the record establishes as a matter of law that 
discrimination or retaliation played no role in the defendant's 
actions.” Id. at 76 (citation omitted). 
 In this case, summary judgment is warranted on Rossbach’s 
NYCHRL gender discrimination claims stemming from her firing. As 
discussed above, the defendants have presented a legitimate, non- 

discriminatory reason for her discharge, and Rossbach has failed 
to demonstrate that this reason was pretextual or that this 
reason was not Montefiore’s sole basis for taking action. Chen, 
805 F.3d at 76. No reasonable jury could therefore find that 
gender-based discrimination played any role in Rossbach’s firing. 
II. Hostile Work Environment Claims Against Veintimilla 
 Veintimilla moves for summary judgment on Rossbach’s 
hostile work environment claims, brought under the NYSHRL and 
NYCHRL. For the following reasons, Veintimilla’s motion for 
summary judgment is granted. 
 A. NYSHRL 
 Hostile work environment claims under the NYSHRL are 
analyzed under the same principles that govern hostile work 

environment claims under Title VII. Tolbert v. Smith, 790 F.3d 
427, 439 (2d Cir. 2015). “A hostile work environment claim 
requires a plaintiff to show that his or her workplace was so 
severely permeated with discriminatory intimidation, ridicule, 
and insult that the terms and conditions of his or her 
employment were thereby altered.” Agosto v. N.Y.C. Dep’t of 
Educ., 982 F.3d 86, 101 (2d Cir. 2020) (citation omitted). 
“This test has objective and subjective elements: the misconduct 
shown must be severe or pervasive enough to create an 
objectively hostile or abusive work environment, and the victim 
must also subjectively perceive that environment to be abusive.” 

Id. at 101–02 (citation omitted). Importantly, “[i]t is 
axiomatic that the plaintiff also must show that the hostile 
conduct occurred because of a protected characteristic.” 
Tolbert, 790 F.3d at 439. 
 In her submission, Rossbach makes three arguments as to why 
Veintimilla’s conduct gave rise to a hostile work environment. 
First, she argues that Veintimilla created a hostile work 
environment by witnessing and ignoring Morales’ sexual 
harassment. Second, she contends that Veintimilla told her that 
she was having an affair with Morales and that Veintimilla 
claimed she was jealous of her because Morales often flirted 
with Rossbach in front of Veintimilla. Third, she argues that 

Veintimilla often “ridiculed, mocked, and cursed” Rossbach and 
other female nurses. 
 None of these arguments are sufficient to survive 
Veintimilla’s motion for summary judgment. In order to survive 
a motion for summary judgment, Rossbach must show not only that 
she was subjected to hostile conduct, but that the conduct 
occurred because of her gender. Rossbach has not made that 
showing. The evidence put forward by Rossbach shows that 
Veintimilla’s comment to Rossbach regarding her relationship 
with Morales, and her abuse of Rossbach and her female 
colleagues, was motivated by Veintimilla’s relationship with 

Morales and her jealousy of those she perceived to be 
interfering with that relationship, not gender. Rossbach’s 
hostile work environment claim is therefore a so-called 
“paramour preference” claim, which cannot give rise to hostile 
work environment liability. See Kelly v. Howard I. Shapiro & 
Assocs. Consulting Eng’rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013). 
 B. NYCHRL 
 As is the case for discrimination claims, the standard for 
hostile work environment liability under the NYCHRL is more 
permissive than that of the NYSHRL. Under the NYCHRL, a 
plaintiff need not prove that the hostile conduct was severe and 
pervasive. Instead, a plaintiff “need only demonstrate by a 
preponderance of the evidence that she has been treated less 

well than other employees because of her gender.” Mihalik, 715 
F.3d at 110. Even under this more lenient standard, however, 
Veintimilla is entitled to summary judgment. For the reasons 
discussed in the analysis of Rossbach’s NYSHRL hostile work 
environment claim against Veintimilla, Rossbach has not 
demonstrated that any hostile conduct was motivated by her 
gender. 
III. Retaliation Claims 
 Defendants have moved for summary judgment on Rossbach’s 
claims that her firing was retaliatory, in violation of Title 
VII, the NYSHRL, and the NYCHRL. The defendants are entitled to 

summary judgment on these claims. 
 A. Title VII and the NYSHRL 
 In order to defeat a motion for summary judgment on a Title 
VII retaliation claim, an employee must first establish a prima 
facie case of retaliation by showing that “(1) he was engaged in 
protected activity, (2) the employer was aware of that activity, 
(3) the employee suffered a materially adverse action, and (4) 
there was a causal connection between the protected activity and 
that adverse action.” Agosto, 982 F.3d at 104 (citation 
omitted). Retaliation claims are analyzed identically under 
Title VII and the NYSHRL. Kelly, 716 F.3d at 14. 
 “[A] causal connection between the protected activity and 

the company's adverse employment action can be established by 
showing that the employer's action followed the protected 
activity closely in time.” Davis-Garett v. Urban Outfitters, 
Inc., 921 F.3d 30, 44 (2d Cir. 2019). But even when the 
protected activity is followed closely in time by an adverse 
employment action, an intervening event between the protected 
activity and the adverse employment action may defeat an 
inference of causation. See Gubitosi v. Kapica, 154 F.3d 30, 33 
(2d Cir. 1998) (holding that, in the context of a First 
Amendment retaliation claim under § 1983, which is analyzed 
under a similar framework, an intervening event was sufficient 

to defeat an inference of causation based on temporal 
proximity). See also Joseph v. Marco Polo Network, Inc., No. 
09cv1597 (DLC), 2010 WL 4513298, at *18 (S.D.N.Y. Nov. 10, 
2010); Soto v. Marist Coll., No. 17cv7976 (KMK), 2019 WL 
2371713, at *11 (S.D.N.Y. June 5, 2019) (collecting cases in 
which courts in this district have held that an intervening 
event defeated an inference of causation). 
 Rossbach argues that her claims of retaliatory firing 
survive because of her assertions that she complained to 
Veintimilla and her union representative about Morales’ sexual 
harassment shortly before her discharge. She reasons that this 
temporal proximity gives rise to an inference of causation. But 

this argument disregards the significant intervening event that 
occurred between these complaints and her firing: her referral 
for a fitness for duty examination, a physician’s performance of 
that examination, and subsequent positive tests for marijuana 
and Tramadol, in violation of Montefiore policy. Misconduct by 
a plaintiff qualifies as an intervening event that defeats an 
inference of retaliation. Gubitosi, 154 F.3d at 33. Therefore, 
Rossbach has not established an inference of causation, and by 
extension, has not established a prima facie case of 
retaliation.4 Defendants are entitled to summary judgment on 
Rossbach’s Title VII and NYSHRL retaliation claims. 
 B. The NYCHRL 

 The NYCHRL prohibits “retaliat[ion] or discriminat[ion] . . 
. against any person because such person has,” inter alia, 
“opposed any practice forbidden under [the NYCHRL].” N.Y.C. 
Admin. Code § 8-107(7). Retaliation claims under the NYCHRL are 
analyzed similarly to those under Title VII and the NYSHRL, but 
the NYCHRL is “slightly more solicitous of retaliation claims.” 
Malena v. Victoria’s Secret Direct, LLC, 886 F.Supp.2d 349, 362 
(S.D.N.Y. 2012) (citation omitted). Nonetheless, a plaintiff 
must still show a causal connection between protected activity 
and the event that was reasonably likely to deter the plaintiff 
from engaging in protected activity. For the reasons discussed 
above, Rossbach has not done so. Defendants are therefore 

4 The defendants additionally dispute Rossbach’s contention that 
her oral complaints to Veintimilla and her union representative, 
and her resistance to Morales’ harassment, qualify as protected 
activities. This Opinion need not reach that issue because 
Rossbach’s failure to establish an inference of causation 
precludes a showing of a prima facie case of retaliation, 
regardless of whether Rossbach’s activities qualify as protected 
activities. 
entitled to summary judgment on Rossbach’s NYCHRL retaliation 
claim. 
IV. Aiding and Abetting Claims 
 Rossbach’s complaint alleges that the defendants aided and 
abetted discrimination, retaliation, and a hostile work 
environment in violation of the NYSHRL and the NYCHRL. The 

NYSHRL and the NYCHRL prohibit any person from “aid[ing], 
abet[ting], incit[ing], compel[ling], or coerc[ing] . . . any of 
the acts forbidden” by the statutes. N.Y. Exec. Law § 296(6); 
N.Y.C. Admin Code § 8-107(6). “The same standards of analysis 
used to evaluate aiding and abetting claims under the NYSHRL 
apply to such claims under the NYCHRL because the language of 
the two laws is virtually identical.” Feingold v. New York, 366 
F.3d 138, 158 (2d Cir. 2004) (citation omitted). A defendant 
must “actually participate[] in the conduct giving rise to a . . 
. claim” in order to be held liable under the NYSHRL and the 
NYCHRL. Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 
1999). 

 A. Discrimination and Retaliation 
 Defendants are entitled to summary judgment on Rossbach’s 
claim for aiding and abetting her discriminatory and retaliatory 
firing. A precondition to a valid aiding and abetting claim 
under the NYSHRL or NYCHRL is a demonstration of a valid primary 
claim for discrimination or retaliation. For the reasons 
discussed above, Rossbach has not demonstrated that her firing 
was motivated by discrimination or retaliation. 
 B. Hostile Work Environment 

 Montefiore is entitled to summary judgment on Rossbach’s 
claim for aiding and abetting liability in connection with her 
hostile work environment claims under the NYSHRL and NYCHRL. 
Montefiore’s potential aiding and abetting liability in this 
case is premised on NYSHRL and NYCHRL hostile work environment 
claims against Montefiore and Morales. Since a defendant cannot 
aid and abet its own violation of the NYSHRL and NYCHRL, the 
hostile work environment claim against Montefiore cannot serve 
as a predicate for the aiding and abetting claim against 
Montefiore. Similarly, a corporate employer cannot be liable 
for aiding and abetting a hostile work environment violation by 
its employee, because such a claim would be derivative of the 
primary hostile work environment claim against the corporate 
employer. Malena, 886 F.Supp.2d at 368. 

 By contrast, neither Morales nor Veintimilla is entitled to 
summary judgment on Rossbach’s aiding and abetting claims 
insofar as they are premised on her hostile work environment 
claim against Montefiore.5 Taking the facts in the light most 
favorable to Rossbach, if Montefiore is liable for a hostile 

5 Montefiore has not moved for summary judgment on Rossbach’s 
NYSHRL and NYCHRL hostile work environment claims. 
work environment under the NYSHRL and the NYCHRL, Morales 
necessarily “actually participated” in that violation because 
Rossbach’s claim against Montefiore is premised on Morales’ 
conduct. 
 Rossbach’s claim against Veintimilla is premised on her 

allegation that Veintimilla, while acting as her supervisor, 
witnessed Morales’ sexual harassment and failed to intervene. 
The Second Circuit has held that NYSHRL aiding and abetting 
liability may accrue when a supervisor is aware of conduct that 
could give rise to a primary claim under the NYSHRL, but 
“t[akes] no action to remedy such behavior.” Feingold v. New 
York, 366 F.3d 138, 158 (2d Cir. 2004); see also Pellegrini v. 
Sovereign Hotels, Inc., 740 F.Supp.2d 344, 356 (N.D.N.Y. 2010) 
(collecting cases in which district courts have held, based on 
Feingold, that a supervisor’s failure to remedy a known hostile 
work environment gave rise to aiding and abetting liability 
under the NYSHRL). While Veintimilla claims that she never 

witnessed Morales’ alleged misbehavior, this factual dispute 
must be resolved at trial. 
V. Claim for Interference with Protected Rights 
 Montefiore and Veintimilla seek summary judgment on 
Rossbach’s claim for interference with protected rights under 
the NYCHRL.6 The NYCHRL prohibits “any person” from “coerc[ing], 
intimidat[ing], threaten[ing] or interfer[ing] with . . . any 
person in the exercise or enjoyment of . . . any right granted 
or protected” under the NYCHRL, or attempting to do so. N.Y.C. 
Admin. Code § 8-107(19). To survive a motion for summary 

judgment, then, a plaintiff must show that a defendant took some 
affirmative step to coerce, intimidate, threaten or interfere 
when the plaintiff exercised a protected right. 
 Rossbach’s submission in opposition to defendants’ motion 
for summary judgment does not describe any actions by Montefiore 
that coerced, intimidated, threatened, or interfered with 
Rossbach’s exercise of a protected right. Rossbach argues that 
Veintimilla attempted to coerce, intimidate, and threaten her in 
order to prevent her from making complaints about Morales’ 
conduct. But Rossbach cites only the incidents in which 
Veintimilla ignored Morales’ harassment and the episode where 
Veintimilla told Rossbach about her affair with Morales as the 

required coercive, intimidating, or threatening actions. 
Rossbach does not describe how these incidents –- one of which 
involved an omission on the part of Veintimilla, rather than an 

6 While Morales claims to be seeking summary judgment on 
Rossbach’s interference claim, defendants’ submission makes no 
argument as to why Morales’ motion for summary judgment on this 
claim should be granted. Morales’ motion for summary judgment 
on this claim is therefore abandoned. 
affirmatively coercive, intimidating, or threatening action -– 
were coercive, intimidating, or threatening, much less allege a 
nexus between these episodes and her exercise of rights under 
the NYCHRL. Montefiore and Veintimilla are therefore entitled 
to summary judgment on this claim. 
VI. Claim for Employer Liability under the NYCHRL 

 Rossbach’s complaint alleges that the defendants are 
vicariously liable for discrimination, retaliation, and a 
hostile work environment under the NYCHRL’s employer liability 
provision.7 Morales and Veintimilla have moved for summary 
judgment on this claim, and Montefiore has moved for summary 
judgment with respect to the claim for employer liability for 

7 The employer liability provision in the NYCHRL, N.Y.C. Admin 
Code § 8-107(13), creates broader employer liability than Title 
VII or the NYSHRL. The NYCHRL creates employer liability in 
cases: 

 (1) where the offending employee exercised managerial 
 or supervisory responsibility . . .; 
 (2) [or] where the employer knew of the offending 
 employee's unlawful discriminatory conduct and 
 acquiesced in it or failed to take immediate and 
 appropriate corrective action; and 
 (3) [or] where the employer “should have known” of the 
 offending employee's unlawful discriminatory conduct 
 yet failed to exercise reasonable diligence to prevent 
 it. 

Zakrzewska v. New Sch., 14 N.Y.3d 469, 479 (2010) (citation 
omitted). 
discrimination and retaliation stemming from Rossbach’s 
discharge.8 
 The NYCHRL’s employer liability provision is not a 
substantive cause of action that creates a distinct form of 
liability for employers, but instead describes the circumstances 

in which “[a]n employer shall be liable for an unlawful 
discriminatory practice based upon the conduct of an employee or 
an agent which is in violation of” the NYCHRL’s substantive 
employment provisions. N.Y.C. Admin. Code § 8-107(13)(b). 
Rossbach’s primary claims under the NYCHRL for discrimination, 
retaliation, and a hostile work environment are discussed above. 
But since Rossbach’s complaint alleges a distinct cause of 
action for employer liability under the NYCHRL and the parties’ 
submissions treat the employer liability claim as distinct from 
Rossbach’s other claims, the NYCHRL employer liability claim is 
discussed separately here. 
 The defendants are entitled to summary judgment. Morales 

and Veintimilla were Rossbach’s colleagues and supervisors, not 
her employer. Therefore, Morales and Veintimilla are entitled 
to summary judgment on Rossbach’s employer liability claim in 
its entirety. Similarly, the employer liability provision 

8 Montefiore has not moved for summary judgment on Rossbach’s 
NYCHRL claim of employer liability for a hostile work 
environment. 
exclusively allows for employer liability when an employee 
discriminates or retaliates, in violation of the NYCHRL’s 
substantive provisions. As discussed above, the defendants are 
entitled to summary judgment on Rossbach’s claims of 
discrimination and retaliation stemming from her discharge. 

There can be no employer liability for discrimination or 
retaliation that the plaintiff has not shown occurred. 
Montefiore is thus entitled to summary judgment on Rossbach’s 
employer liability claim to the extent that the claim is 
dependent on her allegations of discrimination or retaliation 
stemming from her firing. 
VII. Intentional Infliction of Emotional Distress Claim against 
Montefiore and Veintimilla 
 Rossbach has brought claims for intentional infliction of 
emotional distress under New York law against all defendants. 
Montefiore and Veintimilla have moved for summary judgment on 
this claim. For the following reasons, summary judgment is 
granted. 
 Under New York law, an intentional infliction of emotional 
distress claim requires a plaintiff to show “(i) extreme and 
outrageous conduct; (ii) intent to cause, or disregard of a 
substantial probability of causing, severe emotional distress; 
(iii) a causal connection between the conduct and injury; and 
(iv) severe emotional distress.” Rich v. Fox News Network, LLC, 
939 F.3d 112, 122 (2d Cir. 2019) (citation omitted). The 
“extreme and outrageous conduct” element may be satisfied by 
either a single sufficiently extreme and outrageous act, or by a 
series of acts that in isolation are not sufficiently extreme 
and outrageous but “taken together . . . amount to a deliberate 

and malicious campaign of harassment.” Id. Intentional 
infliction of emotional distress is a “highly disfavored tort 
under New York law . . . to be invoked only as a last resort.” 
Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 158 (2d Cir. 2014) 
(citation omitted). 
 Rossbach’s sole argument for Montefiore’s liability on this 
claim is that Montefiore is “vicariously liable for the 
intentional infliction of emotional distress” inflicted on 
Rossbach by Morales and Veintimilla. Under New York law, 
employers are not vicariously liable for torts, such as 
intentional infliction of emotional distress, “committed by the 
employee for personal motives unrelated to the furtherance of 

the employer's business.” Swarna v. Al-Awadi, 622 F.3d 123, 144 
(2d Cir. 2010) (citation omitted). Applying this principle, 
“New York courts consistently have held that sexual misconduct 
and related tortious behavior arise from personal motives and do 
not further an employer's business, even when committed within 
the employment context.” Id. at 144-45 (citation omitted). 
These principles foreclose Rossbach’s intentional infliction of 
emotional distress claim against Montefiore. 
 Veintimilla is also entitled to summary judgment on 
Rossbach’s intentional infliction of emotional distress claim. 
Rossbach’s claim against Veintimilla stems in part from 

Veintimilla’s alleged participation in Morales’ sexual 
harassment. According to Rossbach, Veintimilla witnessed and 
ignored Morales’ sexual harassment and once told Rossbach that 
she was jealous of her. These alleged actions and inactions do 
not constitute the “extreme and outrageous conduct” required for 
liability, and the two incidents cited by Rossbach, separated by 
weeks, do not amount to a “deliberate and malicious campaign of 
harassment.” 
 Rossbach also argues that Veintimilla is liable for 
intentional infliction of emotional distress for, essentially, 
engaging in a ploy to secure Rossbach’s firing by drugging her 
with a marijuana brownie and then sending her for a drug test 

that Veintimilla knew she would fail. Even though it will be 
assumed that this alleged conduct qualifies as extreme and 
outrageous, Veintimilla is still entitled to summary judgment. 
Rossbach has offered little evidence that she experienced 
emotional distress from this episode. While it can also be 
assumed that she suffered emotional distress from the 
termination of her employment, she has not offered sufficient 
evidence that her firing and any related emotional distress was 
caused by her consumption of the marijuana brownie. After all, 
the drug tests found four drugs in her system, two of which were 
not prescribed to her.9 
VIII. Claim for Conduct Constituting Crimes Under N.Y. Penal Law 
§ 130 
 Morales has moved for judgment on Rossbach’s claim under 
N.Y. C.P.L.R. § 213-c. That provision of New York law creates a 
civil cause of action under which victims of certain sexual 
crimes enumerated in N.Y. Penal Law § 130 et seq. may sue their 
attackers. 

 Morales is entitled to summary judgment on this claim. As 
an initial matter, Rossbach failed to address this claim in her 
submission in opposition to Morales’ motion for summary 
judgment. The claim is therefore abandoned, and Morales is 
entitled to summary judgment on that basis. But even if 
Rossbach had not abandoned this claim, Morales would still be 
entitled to summary judgment. N.Y. C.P.L.R. § 213-c creates a 
cause of action for only certain enumerated criminal offenses. 

9 Rossbach did not advise Dr. Hacker that she had ingested Tramadol and 
marijuana. But according to Rossbach, Veintimilla had revealed to her 
that the brownie contained marijuana before Dr. Hacker examined 
Rossbach. 
Rossbach has not alleged the existence of facts that support 
each of the elements of any of the enumerated offenses. 
IX. New York City Victims of Gender-Motivated Violence Protection 
Law Claim as to Morales 
 The final claim addressed in these motions is the claim 
Morales violated the New York City Victims of Gender-Motivated 
Violence Protection Law (“GMVPL”) by groping Rossbach and 
subjecting her to other unwanted physical contact. The GMVPL 
creates a civil cause of action under which “any person claiming 
to be injured by an individual who commits a crime of violence 
motivated by gender” may seek relief. N.Y.C. Admin. Code § 10- 
1104. The statute defines “crime of violence motivated by 

gender” as an act “that would constitute a misdemeanor or felony 
against the person . . . [and] presents a serious risk of 
physical injury to another” that was “committed because of 
gender or on the basis of gender, and due, at least in part, to 
an animus based on the victim's gender.” N.Y.C. Admin. Code § 
10-1103. As such, in order to establish a GMVPL claim, a 
plaintiff must show that “(1) the alleged act constitutes a 
misdemeanor or felony against the plaintiff; (2) presenting a 
serious risk of physical injury; (3) that was perpetrated 
because of plaintiff's gender; (4) in part because of animus 
against plaintiff's gender.” Hughes v. Twenty-First Century 
Fox, Inc., 304 F.Supp.3d 429, 455 (S.D.N.Y. 2018). Generally, 
the animus element requires the plaintiff to present “extrinsic 
evidence of the defendant's expressed hatred toward women as a 
group” or allege specific “actions and statements by the 
perpetrator during the commission of the alleged crime of 
violence.” Breest v. Haggis, 180 A.D.3d 83, 92-93 (N.Y. 1st 

Dep’t 2019). 
 Morales is entitled to summary judgment on this claim. 
First, Rossbach has not produced evidence that Morales’ unwanted 
touching posed a serious risk of physical injury. Further, 
Rossbach has failed to provide evidence –- either extrinsic 
evidence of Morales’ expressed hatred towards women, or specific 
statements made during the episodes of unwanted physical contact 
–- indicating that Morales’ conduct was motivated by gender- 
based animus. 
 Perhaps acknowledging her failure to prove gender-based 
animus, Rossbach points in her submission to Breest, in which a 
court held that gender-based animus could be inferred from rape. 

Id. at 94. But Rossbach does not allege that she was raped by 
Morales, and she points to no authority indicating that the 
requisite animus element may be inferred in GMVPL cases not 
premised on rape. Since Rossbach has not put forth evidence of 
animus or evidence that Morales’ conduct created a serious risk 
of physical injury, no reasonable jury could conclude that 
Morales violated the GMVPL, and summary judgment is granted to 
Morales on this claim. 

 Conclusion 
 The defendants’ November 20, 2020 motion for partial 
summary judgment is granted, except to the extent that 
defendants Morales and Veintimilla seek summary judgment on 
Rossbach’s claim for aiding and abetting a hostile work 
environment under the NYSHRL and the NYCHRL. The following 
claims remain for trial: 
1. Rossbach’s Title VII hostile work environment claim against 
Montefiore (Count 1); 
2. Rossbach’s NYSHRL and NYCHRL hostile work environment claims 

against Montefiore and Morales (Counts 3 and 6); 
3. Rossbach’s NYSHRL and NYCHRL aiding and abetting a hostile 
work environment claims against Morales and Veintimilla (Counts 
5 and 8); 
4. Rossbach’s NYCHRL interference claim against Morales (Count 
9); 
5. Rossbach’s assault and battery claim against Morales (Count 
11); and 
6. Rossbach’s intentional infliction of emotional distress claim 
against Morales (Count 12). 
Dated: New York, New York 
 March 11, 2021 

 DENISE COTE 
 United States District Judge 

 34